1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17

| | |
|---|---|
| SUSAN N., | Case No.  EDCV 20-1081-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| KILOLO KIJAKAZI, Commissioner of Social Security, | |
| Defendant. | |

18   **I.   INTRODUCTION**

19      Plaintiff Susan N.[1] ("Plaintiff") challenges the Commissioner's denial of her

20   application for disability insurance benefits ("DIB") under Title II.  For the reasons

21   stated below, the decision of the Commissioner is reversed and the matter is

22   remanded for an award of benefits.

23   ///

24   ///

25

26   [1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil

27   Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court
     Administration and Case Management of the Judicial Conference of the United

28   States.

## II.    **SUMMARY OF PROCEEDINGS**

On February 3, 2012, Plaintiff applied for DIB alleging disability beginning February 5, 2011, due to idiopathic hypertrophic subaortic stenosis ("IHSS"), "pacemaker, defibrillator, [and] brain bleed." (Administrative Record ("AR") 170, 206). Her application was denied initially on August 10, 2012 and upon reconsideration on May 22, 2013. (AR 72-95.) Plaintiff filed a written request for hearing, and a hearing was held on March 3, 2014, at which Plaintiff, represented by counsel, appeared and testified, along with an impartial vocational expert. (AR 37-71.) On April 25, 2014, an Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[2] from February 5, 2011 through the decision date. (AR 23-32.) Plaintiff requested that the Appeals Council review the decision on June 20, 2014. (AR 18-19.) On October 19, 2015, the Appeals Council denied Plaintiff's request for review. (AR 1-6.) Plaintiff filed an action in this Court on December 10, 2015. (AR 505-07.) On April 28, 2017, the Court reversed the decision of the Commissioner and remanded the matter for further proceedings. (AR 520-23.) Accordingly, the Appeals Council vacated the ALJ's April 2014 decision and remanded the case to an ALJ on October 10, 2017. (AR 527.)

Pursuant to the order of remand, an ALJ conducted a second hearing on May 7, 2018, at which Plaintiff, represented by counsel, appeared and testified, along with an impartial vocational expert. (AR 439-78.) On May 30, 2018, the ALJ published a second unfavorable decision. (AR 554-72.) Plaintiff requested that the Appeals Council review the decision, and the Appeals Council granted the request for review and remanded the case for further administrative proceedings on June 11, 2019. (AR 575-76.)

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

1    Pursuant to the second order of remand, an ALJ conducted a third hearing on
2    January 16, 2020, at which Plaintiff, represented by counsel, appeared and testified,
3    along with an impartial vocational expert.  (AR 480-504.)  At the hearing, Plaintiff
4    requested a closed period of benefits, alleging disability from February 5, 2011
5    through January 1, 2015.  (AR 490-91.)  On February 4, 2020, the ALJ found that
6    Plaintiff had not been under a disability, pursuant to the Social Security Act, from
7    February 5, 2011 through January 1, 2015, the last day of the requested closed period.
8    (AR 423-31.)  The ALJ's decision is the Commissioner's final decision.  Plaintiff
9    filed this action on May 27, 2020.  (Dkt. No. 1.)

10    The ALJ followed a five-step sequential evaluation process to assess whether
11    Plaintiff was disabled under the Social Security Act.  *Lester v. Chater*, 81 F.3d 821,
12    828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had engaged in
13    substantial gainful activity from September 2012 through December 2012, as well as
14    January 1, 2015 through the date of decision.  (AR 425-26.)  Because this finding did
15    not resolve the entirety of Plaintiff's claim, the ALJ proceeded with the sequential
16    evaluation process and considered the period from the alleged onset date, February
17    5, 2011, through December 31, 2014, the date before Plaintiff commenced
18    performing substantial gainful activity.  (AR 426.)  At **step two**, the ALJ found that
19    Plaintiff had the severe impairments of paroxysmal atrial fibrillation; hypertrophic
20    cardiomyopathy; mitral regurgitation; dyslipidemia; and AV malfunction in the left
21    posterior hemisphere.  (AR 426.)  At **step three**, the ALJ found that Plaintiff "did not
22    have an impairment or combination of impairments that met or medically equaled
23    the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix
24    1."  (AR 426.)

25    Before proceeding to step four, the ALJ found that for the period of February
26    5, 2011 through January 1, 2015, Plaintiff had the residual functional capacity
27    ("RFC") to:

28

3

1
2
3
4

> [P]erform light work . . . except [Plaintiff] would need to sit and stand in 30-minute intervals. She c[ould] frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds. She c[ould] frequently stoop, kneel and crouch. She c[ould] occasionally crawl. [Plaintiff] must avoid concentrated exposure to extreme heat, dust, fumes, odors, pulmonary irritants, and hazards."

5

(AR 427.)

6
7
8
9
10
11
12
13

   At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that through the last day of the requested closed period, Plaintiff was unable to perform any past relevant work. (AR 429.) At **step five**, the ALJ found that through January 1, 2015, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (AR 430.) Accordingly, the ALJ found that Plaintiff "was not under a disability . . . at any time from February 5, 2011, the alleged onset date, through January 1, 2015, the last day of the requested closed period." (AR 431.)

14

## III.   STANDARD OF REVIEW

15
16
17
18
19
20
21
22
23
24
25
26
27

   Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, —U.S. —, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

28

///

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion."  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins v. Social Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

**IV.   DISCUSSION**

**A.   The ALJ Erred In Rejecting Plaintiff's Subjective Symptom Testimony**

Plaintiff's sole contention is that the ALJ erred in rejecting her subjective symptom testimony.  Specifically, Plaintiff argues that the ALJ failed to articulate legally sufficient reasons to reject her testimony that she could not work because she needed to take 10-15 minute breaks about five times a day due to shortness of breath from her heart problems.  (Joint Submission ("JS") at 5-16.)  For the reasons below, the Court agrees.

Where, as here, the claimant has presented evidence of an underlying impairment and the ALJ did not make a finding of malingering (*see* AR 427-28), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit . . . her ability to perform work-related activities."  Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4.

In assessing the intensity and persistence of symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The ALJ must provide specific, clear and convincing reasons for rejecting the claimant's statements. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citation omitted). The ALJ "must specifically identify the testimony she . . . finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

At the first hearing in March 2014, Plaintiff testified that she could fix her own meals and take care of her personal hygiene. (AR 45.) She could mop, sweep, vacuum, do the dishes, do laundry, and shop, all with rest breaks. (AR 45-47.) Typically, she would have to stop to rest after about 10 to 15 minutes of light work. (AR 46.) Her activities included going to the library to read, going to a friend's house to watch television, visiting her brother at a nursing home, and walking in a park. (AR 47-48.) She could not work because she gets out of breath, has chest pain up to two or three times a day, and sometimes her defibrillator goes off. (AR 49-50.) She could stand and walk about 15 minutes before sitting down. (AR 57-58.) She gets shortness of breath even when she does not exert herself. (AR 59.) She has to lie down about once a day for about half an hour due to her heart problems. (AR 64.)

Plaintiff testified at the second hearing in May 2018 that she went back to work because she "didn't want to be on the street." (AR 461.) When her attorney questioned her about what changed between the time she could not work in February 2011 until the time she went back to work, she testified that she tried to be better at managing her condition. (AR 467.)

///

At the third hearing in January 2020, Plaintiff testified that from February 5, 2011 to December 31, 2014, she would get short of breath if she walked too much, but her heart problem was not as bad "as it is now." (AR 493.) She had to take 15 minute breaks about five times a day when she got out of breath, so her defibrillator would not "kick in and zap [her]." (AR 493-94.) She went back to work in 2015 because she "[s]omewhat" got better at managing her heart racing, but also because she "had to go back to work in order to survive." (AR 496.) She could do chores around the house, but could not lift "a lot of heavy stuff." (AR 499.) She had no problems going grocery shopping unless pushing the basket was too heavy. (AR 499.)

The ALJ found that Plaintiff's testimony was not entirely consistent with the medical and other evidence in the record. (AR 428.) The ALJ rejected Plaintiff's symptom testimony because: (1) it was not supported by the objective medical evidence; and (2) her treatment was "generally successful in controlling [her] symptoms." (AR 428-29.) Generally speaking, these are legitimate reasons for discounting a claimant's credibility. *See, e.g., Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (holding inconsistencies between subjective complaints and specific medical evidence constitute "significant and substantial reasons" for finding a claimant's testimony less than credible); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (Impairments that can be "controlled effectively" by medication or treatment are not considered disabling for purposes of determining eligibility for Social Security benefits.) (citation omitted).

Here, the ALJ provided a relatively detailed summary of Plaintiff's medical records but never elaborated on her conclusory finding that Plaintiff's statements were not consistent with, and thus not supported by, the objective medical evidence. *See Lambert*, 980 F.3d at 1278 (finding ALJ erred in rejecting claimant's testimony because "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not

credible") (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). The ALJ noted Plaintiff's trips to the emergency room in November 2011 for headaches and aphasia, March 2012 for heat exhaustion and palpitations (clinical impression was IAED discharge), and May 2013 for AICD shock; a CT scan showing questionable calcified arteriovenous malformation on the left insular cortex was assessed as a venous angioma as previously diagnosed with an associated cavernoma which had most likely bled and calcified; a brain scan determined that hemorrhage was highly unlikely and an EKG revealed no significant Q waves and normal sinus rhythm (although the clinical impression was noted as an abnormal EKG); the consultative examiner documented a scar from Plaintiff's implanted cardiac defibrillator and irregularity of heartbeat, but opined that Plaintiff could perform light work; and Plaintiff was in atrial fibrillation 1% of the time. (AR 319-20, 338-39, 340, 417-18, 428-29, 887.) The ALJ then concluded that such evidence "casts doubt on the consistency of [Plaintiff's] allegations." (AR 429.) The ALJ never discussed how the cited evidence conflicts with any of Plaintiff's subjective testimony.

For the Court to meaningfully review whether the ALJ's decision was supported by substantial evidence, the ALJ must provide specific findings as to "the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Holohan*, 246 F.3d at 1208). The ALJ did not do so here. Since the ALJ apparently rejected Plaintiff's statements regarding her need to take breaks due to her heart condition as not consistent with the objective medical evidence, the ALJ was required to identify specific evidence from the medical record that conflicted with those statements. Merely summarizing the objective evidence, as the ALJ did here, is not sufficient to show that Plaintiff's testimony regarding breaks is undermined. *See Lambert*, 980 F.3d at 1278.

The ALJ also rejected Plaintiff's symptom testimony due to successful treatment, noting that after each "symptomatic episode" that required emergency

room treatment in 2011-13, Plaintiff's "treatment plan was updated so that she could continue to live asymptomatic, allowing her to eventually return to full-time work." (AR 429.)  The ALJ did not identify the evidence on which she relied to support this finding.  According to the Court's review of the record, Plaintiff's treatment notes during the closed period at issue are sparse.  The record contains treatment notes from Plaintiff's treating cardiologists, dated February 25, 2011, July 19, 2012, July 23, 2014, and November 17, 2014.  (AR 915-19.)  The record also contains treatment notes and reports from Plaintiff's doctors at Arrowhead Regional Medical Center, dated November 12, 2011, November 17, 2011, December 8, 2011, March 1, 2012, and April 5, 2012.  (AR 332-48.)  Some of the treatment notes are handwritten and difficult to decipher, but Plaintiff's treatment appears to have consisted generally of follow-up appointments regarding Plaintiff's defibrillator and testing.  (AR 332-48, 492, 915-19.)  Occasional adjustments appear to have been made to Plaintiff's medication, but contrary to the ALJ's characterization, such adjustments did not appear to make Plaintiff "asymptomatic."  (AR 333, 887, 894, 915-19.)  The record, instead, shows that Plaintiff continued to require emergency room treatment for heart-related problems during the closed period and even after she returned to work. (*see, e.g.,* AR 891, 894, 990).  The Court is not persuaded, without more, that Plaintiff's treatment during the relevant time period could be properly characterized as successful in controlling her symptoms and, thus, serve as a valid reason for undermining Plaintiff's symptom testimony.

Respondent argues that the ALJ provided other valid reasons to reject Plaintiff's subjective testimony, including Plaintiff's collection of unemployment benefits and her activities of daily living.  (JS at 17-19.)  The ALJ, however, merely noted that Plaintiff collected unemployment after she was laid off in 2011 and did not appear to reject Plaintiff's subjective testimony on the ground that Plaintiff received unemployment benefits.  (AR 426-29.)  Similarly, the ALJ noted that Plaintiff had no problems going grocery shopping or doing chores around the house,

but again, the ALJ did not appear to rely on Plaintiff's daily activities in rejecting Plaintiff's subjective testimony.  (AR 427-29.)  The Court is constrained to review the reasons asserted by the ALJ.  *See Connett*, 340 F.3d at 874.

Because the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective testimony, remand is warranted.

### B.   Remand for an Award of Benefits is Warranted

Plaintiff argues that the Court should credit her testimony and award her a payment of benefits.  (JS at 15-16.)  The Commissioner argues that if the Court were to find error in the ALJ's decision, the proper remedy would be a remand for further administrative proceedings.  (JS at 20-22.)  The Commissioner acknowledges that the Court has the discretion to credit Plaintiff's testimony as true and remand for an award of benefits but argues that this case does not meet the "narrow circumstances" required to justify such actions because the record contains conflicting evidence as to Plaintiff's alleged disability that must be resolved on remand.  (JS at 20-22.)  The Court disagrees and finds for the following reasons that an award of benefits is warranted here.

First, the record is fully developed and does not create a "serious doubt" that Plaintiff was disabled during the closed period.  *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).  The ALJ found that Plaintiff could perform light work but with additional restrictions.  (AR 427.)  Plaintiff testified that she would need to take approximately five additional breaks of 15 minutes each, or 75 minutes of breaks in total, during the day.  (AR 493-94.)  The vocational expert testified that an individual with the residual functional capacity assessed by the ALJ who needed an additional 40 minutes of breaks during the day would be unable to sustain full-time employment.  (AR 502.)

The Commissioner's arguments to the contrary are rejected.  The ALJ noted the fact that Plaintiff was on disability in 2011 and 2012 but did not proffer that as a reason to reject Plaintiff's testimony.  (AR 427.)  Further, the examining

physician's conclusion in May 2013 that Plaintiff would be able to work at a light level of exertion and walk and stand for six hours in an eight-hour workday (AR 418) does not inherently undermine Plaintiff's testimony that she would need some 75 minutes of extra break time during the day.

Because the record is fully developed, the ALJ failed to provide valid reasons for rejecting Plaintiff's testimony, and the ALJ would be required to find Plaintiff disabled if the rejected testimony were accepted, the Court credits the testimony as true. *See Garrison*, 759 F.3d at 1020 (reaffirming validity of "credit-as-true" rule); *see also Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1165 (9th Cir. 2012) (finding claimant disabled and remand for award of benefits proper where treating doctors opined she would miss multiple days of work per month and vocational expert testified such a person was not employable).

Finally, the Court notes that the only remaining issue in this case was Plaintiff's testimony regarding her condition between February 2011 and January 2015. She has testified on three occasions and the case has been remanded twice already. Remanding for further administrative proceedings now, six years after the closed period in question, would serve only to provide one more opportunity for the Commissioner to scour the record in the hope of finding and offering other reasons to reject Plaintiff's testimony. *See Garrison*, 759 F.3d at 1021 ("[O]ur precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of the credit-as-true analysis."). In sum, after a careful review of the record and the arguments presented therefrom, the Court concludes that an award of benefits is justified.

## V.    **CONCLUSION**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner and REMANDING the matter for an award of benefits.

///

1    IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

2    Order and the Judgment on counsel for both parties.

3

4    DATED:  July 22, 2021

5                                       ROZELLA A. OLIVER
                                         UNITED STATES MAGISTRATE JUDGE
6

7                                **NOTICE**

8    **THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW,
     LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28